### GOULD v. HEAD et al.

*(Circuit Court, D. Colorado. May 31, 1889.)*

AMERICAN CATTLE TRUST—CORPORATIONS.

The American Cattle Trust, a voluntary association organized in New York to control corporations engaged in live-stock business, having obtained the stock of the Phœnix Farm & Ranch Company, a New Mexico corporation, has no power to sell or in any manner alienate such stock, as such an act is inconsistent with the purposes of its creation.

*(Syllabus by the Court.)*

In Equity. Bill for injunction.
*Rogers & Cuthbert*, for complainant.
*Hugh Butler*, for defendants.

HALLETT, J. This controversy relates to the capital stock of the Phœnix Farm & Ranch Company, a corporation organized under the laws of the territory of New Mexico. Complainant obtained the stock of the American Cattle Trust, a voluntary association of 13 persons made in New York on the 5th day of January, 1887. At the hearing of the motion for injunction defendant Head made affidavit that he was unable to produce the articles of association of the American Cattle Trust, and gave his recollection of the nature of the organization, from which it appeared that it received the stock as trustee for the original owners, and was with-

out authority to sell or transfer the same. As this was a material point affecting complainant's title to the shares of stock, and his right to maintain this suit, it was deemed advisable to continue the hearing with a view to examine the articles of association of the cattle trust; and they are now presented. It will not be necessary to consider at length the peculiar powers of this association. The second paragraph of the articles is as follows:

"The general object contemplated by the parties who unite in the establishment of this trust is to encourage, develop, and secure improved methods and economies in the production, transportation, distribution, handling, and sale of cattle, sheep, hogs, and other animals, and of the food and other products produced or manufactured from them, or any or all of them, in the United States or elsewhere, and to transact any and all other business incident thereto, growing out of, or connected therewith, or with any or all of them."

The fifth paragraph is as follows:

"The method adopted by the parties hereto and the trustees acting under the trust agreement for accomplishing the objects hereinbefore stated is the acquisition by purchase, exchange, or otherwise, and the holding, management, and disposition of shares of the capital stock of companies, corporations, and joint-stock associations organized for any of the purposes hereinbefore named in the second article of this agreement, in the states and territories of the United States and in the District of Columbia, as well as in any other country."

And among the powers and duties of the trustees the following are enumerated:

"To acquire, receive, hold, and dispose of the title to shares of the capital stock of companies, corporations, and joint-stock associations organized and engaged in any of the lines or branches of business hereinabove described, or in any business relating to or connected therewith, or in any degree pertinent or auxiliary thereto. To collect the dividends that may be declared and profits that may accrue to, upon, and in favor of said shares of capital stock of said companies, corporations, and joint-stock associations, and of the holders thereof, to invest, dispose of, and reinvest the same, and all accumulations thereof, or additions thereto, in the stocks, bonds, and other securities or obligations of companies, corporations, or joint-stock associations engaged in any of the lines or branches of business above described, or in any business relating thereto, connected therewith, or in any way auxiliary thereto, or in the funded debt of the United States or of any state, county, or municipality thereof, or upon any other security deemed sufficient, as from time to time the said trustees in their absolute discretion may deem prudent investments for the benefit of the trust. To issue trust certificates for property or for cash in parts or shares, which for the purposes of this trust agreement shall be valued at one hundred dollars each, representing the equity of the property acquired, and held by the trustees to any total amount and upon any terms to be agreed on as hereinafter more specially described and set forth."

Without quoting further from the articles of association, it may be sufficient to state that the general purpose of the organization was to secure control of corporations and perhaps voluntary associations engaged in live-stock business, and thus unite the management of all such companies in the hands of the trust. As stated in the affidavit of Charles W. Gould, chairman of the trust,—

"It was hoped and believed that, by associating a number of live-stock properties in different sections of the country, advantage could be taken of favoring circumstances possessed by these different properties, but not common to all; * * * that, in short, by uniting the different properties, putting them under a common management, introducing economy, husbanding resources, the live-stock business could be profitably conducted; that in order to secure efficient management thereof the entire property thus associated and the absolute control of the same was vested in a board of trustees."

The corporations thus associated renounced autonomy, but not their existence. They committed their affairs into the hands of the trust, because they could be better managed by the trust than by themselves. They still lived and owned their property, but the trust was a regency of their own creation, with absolute and irrevocable power over all their concerns. Ten corporations are mentioned in the affidavits as thus united in the trust, not by the direct act of the corporations, but by transfer of their stock to the trust, or to persons holding in its interest. And it is urged that by some general expressions in the articles of association the trust was given absolute authority to sell and dispose of the stock in its discretion. But this interpretation is not in accord with the purpose for which the trust was organized. The stock was transferred to the trust, not for the purpose of being sold, but to give control of the corporation; to make the officers puppets in the hands of the trust, and thus substitute the latter as the governing body of the corporation. In other words, the purpose of the association was, not to buy and sell corporations in open market, but to manage and control them. In this view it is clear enough that the sale of the stock by the trust was wholly inconsistent with the scheme of its organization. The doctrine leads to *felo de se*. If by selling the stock of one corporation, and thus parting with its control over it, the trust may renounce its function, the same course may be pursued as to all the corporations in its control. This cannot be. It is absurd to suppose that the projectors of the scheme would thus implant in it the seeds of dissolution. So that, if we accept the articles of association for all that they purport to be, there was in the trust no power to sell the stock of the corporations which it held. Furthermore, the transfer of stock to the trust was without consideration. The trust had no property and no expectation of acquiring any. As before stated, it was organized for controlling corporations, and not for holding or acquiring property in its own right. The certificates of the trust issued in exchange for the stock of the Phœnix Farm & Ranch Company were on their face "shares in the equity to the property held by the trustees of the American Cattle Trust," and did not convey any property whatever. The stock thus obtained was given to complainant in exchange for other certificates of the trust, which he says he had previously purchased for a valuable consideration. To allow the trust to acquire stock from some of its members and transfer it to others by issuing and canceling certificates in this manner would be nothing less than common jugglery. Upon all that appears in the record, it must be said that the trust was without authority to alienate any of the stock of the several corporations in its control,

and therefore complainant's title to the stock of the Phœnix Farm & Ranch Company is not good. The motion for injunction will be denied.